**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LOUIS HENNA, LLC,** *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:24-CV-01349-RP** |
| | § | |
| **STATE FARM LLOYDS,** *Defendant* | § | |

**ORDER AND REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are State Farm Lloyds' Opposed Motion to Strike Expert Testimony of Arnulfo Escamilla, filed January 15, 2026 (Dkt. 20); State Farm Lloyds' Motion for Partial Summary Judgment Regarding Extra-Contractual Claims, filed March 2, 2026 (Dkt. 24); and the associated response and reply briefs.[1]

## I. Background

Louis Henna, LLC filed this insurance coverage and bad faith suit against its insurer State Farm Lloyds in state court, asserting breach of contract, breach of the common law duty of good faith and fair dealing, and violations of the Texas Insurance Code (unfair settlement practices and the prompt payment of claims). Dkt. 1-2. It seeks actual damages, treble damages, exemplary damages, interest, costs, and attorneys' fees.

[1] By Text Orders entered February 2, 2026 and April 7, 2026, Judge Pitman referred the motion to strike to this Magistrate Judge for disposition and the motion for partial summary for a report and recommendation, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

State Farm removed to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Dkt. 1 at 2.[2] The case is set for a bench trial before Judge Pitman Court on October 26, 2026. Dkt. 31.

State Farm moves to strike the expert testimony of Louis Henna's roof damages expert. State Farm also seeks partial summary judgment on Louis Henna's bad faith insurance claims and claims for exemplary and treble damages.

## II. Undisputed Facts

Louis Henna owns a commercial building in Austin, Texas ("Property"). Dkt. 24-1 at 236. During the events giving rise to this suit, the Property was insured under a State Farm business insurance policy ("Policy"), which provided coverage for certain accidental losses to the Property up to $2,155,900. *Id.* at 235-314.

A severe hailstorm hit the Austin area on September 24, 2023. Dkt. 24-1 at 760; Dkt. 24-2 at 156, 177. Meteorological records from AccuWeather, HailTrace, and the National Oceanic and Atmospheric Storm Events Database reported three- to four-inch hailstones in the vicinity of the Property. Dkt. 24 at 3; Dkt. 24-1 at 57, 316-21; Dkt. 24-2 at 177. Louis Henna alleges that the Property's single-ply thermoplastic polyolefin ("TPO") roof, HVAC units, and stucco exterior were severely damaged in the hailstorm and that the roof needed to be fully replaced. Dkt. 1-2 at 6. Louis Henna submitted a claim to State Farm on October 20, 2023. Dkt. 24-1 at 7.

Louis Henna hired public adjuster James King to inspect the Property and prepare a damages report. Dkt. 24-1 at 758. King and State Farm's staff adjuster, Jennifer Jennings, performed a joint inspection of the Property on November 17, 2023. *Id.*

[2] Because State Farm's jurisdictional allegations were insufficient to establish complete diversity among the parties, this Magistrate Judge ordered State Farm to file a supplemental brief identifying and alleging the citizenship of each member of Louis Henna, LLC. Dkt. 27. State Farm timely complied by filing a Statement of Jurisdiction showing that diversity jurisdiction exists. Dkt. 28.

In his damages report, King "found significant hail damage to the TPO membrane and metal accessories on the roof," and that due to "the extensive hail damage to the roof, a full replacement is necessary," at a cost of $511,326.11. *Id.* at 761. But Jennings reported in her claim notes that she "did not observe any softness to the underlayment of the roof's impacted areas" and determined there was "no covered loss damage to roof's surface." *Id.* at 46. The only damage Jennings reported was to one power attic vent cover and "a few fan blades of one HVAC unit." *Id.*

Based on Jennings' initial inspection, State Farm determined that the damage to the Property was less than the Policy's $1,000 deductible and denied the claim on November 21, 2023. *Id.* at 479. Immediately after the claim was denied, King emailed Jennings, accusing her of spending less than ten minutes inspecting the roof on November 17, 2023. *Id.* at 490. King also states in his damages report that during their joint inspection of the roof

> Jennings commented that she could immediately see large spatter throughout all roofing and large dents in all metals. Jennifer proceeded to take pictures of hail damage to one of the A/C units, dents on some metal items, and spatter on the TPO roofing. After a couple minutes of taking pictures, Jennifer stated that she is done inspecting the roof, thanked me for my time, and advised that she would be 1eaving for her next appointment.
>
> James told Jennifer that he was surprised that she was ending her inspection after less than 5 minutes of looking at the damage. James asked Jennifer if she would like him to point out evidence of damage to the TPO roofing to her, since it did not appear that she spent any time inspecting the membrane. Jennifer advised that she could easi1y see the damage to the TPO roofing, and it was not necessary to point it out to her. James asked Jennifer if State Farm would be sending out an engineer to inspect the TPO membrane. Jennifer stated that there was no need to send out an engineer because the damage was obvious, and State Farm would only send an engineer if there were structura1 damage . . . . Jennifer advised that she could not discuss her findings with James on site, but she did not believe there would be coverage issues in this claim.

*Id.* at 758. King states Jennings told him in a telephone call on November 21, 2023: "after talking to her supervisor, they determined that there is no damage to the TPO membrane roof." *Id.* at 759.

Louis Henna asked State Farm to reinspect the Property and State Farm sent a different staff adjuster, Tracy Hanna, to inspect the roof on December 19, 2023. *Id.* at 43. Hanna found the following damage:

> Visible hail damage to Large wall/roof cap 5" x 24" x 16" painted to match Stucco siding. Adjusting to R&R cap wall flashing and paint cap wall flashing. TPO roofing has hail splatter however no visible fractures to the membrane where found. Indention that are visible are smaller indention than the anchoring mounts that hold the ISO board down.

*Id.* Hanna also found that five of the eight HVAC units had to been damaged and needed to be repaired. *Id.* at 764.

Based on Hanna's inspection, State Farm adjusted the claim on January 11, 2024, and estimated it would cost $24,906.65 to repair the roof, HVAC units, and other damage to the exterior of the building. *Id.* at 796. State Farm adjusted the claim again on January 26, 2024, sent Louis Henna a check for $45,371.98, and closed the claim. *Id.* at 807-08.

On April 11, 2024, Louis Henna's attorney sent State Farm a demand letter accusing State Farm of violating the Texas Insurance Code for failing to timely pay its purported loss of $503,740.50. *Id.* at 810-15. The next day, State Farm reopened the claim. *Id.* at 76.

## III. Motion to Strike

Louis Henna designated Arnulfo F. Escamilla, P.E., a licensed professional engineer with South Texas Restoration Inc., as its roof damages expert. Dkt. 24-2 at 153. Escamilla inspected the Property on October 28, 2024 and July 21, 2025, researched weather data recorded in the general vicinity of the Property on the day of the loss, "[c]onducted a visual, non-destructive & destructive assessment of the affected portions of the structure to document, photograph, and evaluate the site conditions," performed an engineering evaluation of the information, and prepared a Damage Assessment Report summarizing the results. Dkt. 24-2 at 153.

Escamilla reported observing the following damage to the roof: (1) "Spatter or blemish marks of various sizes observed on the TPO membrane and mechanical finishes"; (2) "Fresh circular impacts to coil fins facing the west end of the structure"; and (3) "Scratches and micro fractures to the scrim backing of the TPO membrane confirmed with destructive investigation." *Id.* at 156. Escamilla opined that "there is evidence to support that the TPO roof system has sustained functional damage and is compromised as a result of hail impacts sustained on or about September 24th, 2023," and that, "due to the widespread nature of the damage observed it is my recommendation is that a roof should be entirely replaced." *Id.* at 159.

State Farm moves to strike Escamilla's testimony "with regard to his opinions regarding roof damages" under Federal Rule of Evidence 702. Dkt. 20 at 1. State Farm argues that Escamilla relies on insufficient data, his opinions are not the product of reliable principles and methodology, and his opinions do not reflect the reliable methodology or principles of the authorities he cites to support them. Although State Farm's own damages expert did not perform any testing of the roof, State Farm also argues that Escamilla's roof testing was insufficient because he tested only four locations.

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), district courts act as "gatekeepers" to ensure that expert testimony is both reliable and relevant. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). "The court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). Questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "[T]he

rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment.

The importance of the trial court's gatekeeper role "is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010); *see also Palm Valley Health Care Inc. v. Azar*, 947 F.3d 321, 330 (5th Cir. 2020) ("[T]he procedural 'gatekeeping' aspects of *Daubert*, aimed as they are at preventing the jury from being tainted by unreliable evidence . . . do not fully translate to bench trials: in reaching a decision, a judge will only rely on evidence the judge deems reliable"); *Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 657 (W.D. Tex. 2018) ("Safeguards such as those provided for in Rules 701 and 702 and discussed in *Daubert* are largely irrelevant in the context of a bench trial.").

The Honorable Robert Pitman is the trier of fact in this case and has discretion to exclude or disregard Escamilla's opinions at trial. *H.L. Hawkins Jr., Inc. v. Capitan Energy, Inc.*, No. PE:22-CV-00020-DC-DF, 2023 WL 4216102, at *8 n.72 (W.D. Tex. June 27, 2023). State Farm will have an opportunity during the bench trial to cross-examine Escamilla and present its own expert testimony in rebuttal. For these reasons, State Farm's Motion to Strike (Dkt. 20) is **DENIED**.

## IV. Motion for Partial Summary Judgment

Louis Henna alleges that State Farm breached the duty of good faith and fair dealing by "failing to adequately and reasonably investigate and evaluate Plaintiff's claim when it knew or should have known, by the exercise of reasonable diligence, that its liability was reasonably clear." Dkt. 1-2 at 14. It also alleges that State Farm violated the unfair settlement provisions of Chapter 541 of the Texas Insurance Code by misrepresenting material facts relating to coverage; failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, "even though State Farm's liability under the Policy was reasonably clear"; failing to promptly

provide a reasonable explanation of the basis in the Policy for its offer; failing to affirm or deny coverage of the claim within a reasonable time; and refusing to pay the claim without conducting a reasonable investigation. *Id.* at 13.

State Farm seeks summary judgment on Louis Henna's statutory and common law bad faith claims, arguing that this case involves a bona fide coverage dispute, precluding a finding of bad faith. State Farm also seeks judgment on Louis Henna's claims for treble and exemplary damages.

**A. Legal Standards**

Summary judgment is proper when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, to designate specific facts showing that there is a genuine issue for trial." *Davis*, 765 F.3d at 484 (cleaned up). Summary judgment is

appropriate only "if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

When as here, jurisdiction is based on diversity, courts apply the substantive law of the forum state, in this case Texas. *Erie R. v. Tompkins*, 304 U.S. 64, 78 (1938).

**B. Bad Faith Claims**

Louis Henna's common law good faith and fair dealing claim and Chapter 541 unfair settlement claim both require a showing of bad faith and share the same defenses. *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002). "Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). An insurer breaches its duty of good faith and fair dealing by denying or delaying a claim when the insurer's liability has become "reasonably clear." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham*, 103 F.3d at 459.

Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith, but "an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). In other words: "An insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear. Instead, we reaffirm that an insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997).

Whether an insurer's liability has become reasonably clear generally is a fact issue for the trier of fact. *Id.* at 56. "A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence, but when there is evidence on either side, the issue is a fact question." *Id.*

In support of its bad faith claims, Louis Henna cites:

- King's testimony that Jennings inspected the roof for less than ten minutes and acknowledged that she saw damage but retracted those opinions after speaking to her supervisor. Dkt. 24-1 at 758-59;

- King's damages report documenting significant damage to the roof requiring a full replacement at a cost of $511,326.11. *Id.* at 761;

- State Farm's second inspection finding damage to the roof, in contrast to Jenning's initial report. *Id.* at 43;

- State Farm payment of $45,371.98 on the claim more than two months after the initial inspection, after receiving King's Report. *Id.* at 807-08;

- State Farm's reopening of the claim months later, after receiving a demand letter from Louis Henna's attorney. *Id.* at 76, 810-15;

- State Farm's failure to hire an outside engineer to inspect the roof for thirteen months after the date of loss. *Id.* at 834-46;

- The failure of State Farm's damages experts to perform any physical testing of the roof. Dkt. 24-2 at 174-180; and

- Louis Henna's damages expert report finding significant damage to the roof. *Id.* at 159.

The Court finds that Louis Henna satisfies its burden to show that a genuine dispute of material fact exists as to whether State Farm reasonably investigated and had a reasonable basis to deny Louis Henna's claim. *EPT Dos Santos Apartments, LP v. State Farm Lloyds*, No. 3:24-CV-00458-DB, 2026 WL 931721, at *7 (W.D. Tex. Feb. 25, 2026), *R. & R. adopted*, 2026 WL 1196605 (W.D. Tex. Mar. 27, 2026); *Lopez v. State Farm Lloyds*, 780 F. Supp. 3d 663, 678 (W.D. Tex. 2025); *Winterfield United Methodist Church v. Church Mut. Ins. Co., S.I.*, No. 6:23-CV-00558-JDK, 2024 WL 5356135, at *7-9 (E.D. Tex. Dec. 17, 2024), *R. & R. adopted*, 2025 WL 63670

(E.D. Tex. Jan. 9, 2025). This Magistrate Judge recommends that Judge Pitman deny State Farm's motion for summary judgment on Louis Henna's bad faith claims because fact issues exist.

**C. Treble and Exemplary Damages**

State Farm also moves for summary judgment on Louis Henna's claims for treble and exemplary damages under Section 541.152(b) of the Texas Insurance Code. That statute allows a plaintiff who prevails in an action to obtain "the amount of actual damages, plus court costs and reasonable and necessary attorney's fees" and treble damages "on a finding by the trier of fact that the defendant knowingly committed the act complained of." Whether State Farm acted knowingly is an issue of fact. *Id.*; *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 309 (Tex. App.—El Paso 2010, pet. denied).

State Farm contends there is no evidence it knowingly violated the Texas Insurance Code, but the Court finds that the evidence cited above could create an inference State Farm acted knowingly. If Louis Henna shows State Farm violated the Policy by withholding benefits due under the contract, it also may seek additional damages under the Texas Insurance Code for any knowing violation. *Abulehieh v. State Farm Lloyds*, No. SA-23-CV-00572-FB, 2024 WL 3307622, at *8 (W.D. Tex. June 4, 2024), *R. & R. adopted*, 2024 WL 3305746 (W.D. Tex. July 3, 2024). This Magistrate Judge recommends Judge Pitman also deny summary judgment on treble damages.

Finally, State Farm contends the Court should grant summary judgment on Louis Henna's exemplary damages claim because it offers no evidence State Farm engaged in fraud, malice, or gross negligence. In response, Louis Henna merely argues that this question is premature as an issue for the jury. Dkt. 25 at 9.

The Texas Civil Practices and Remedies Code allows an award of exemplary damage if the plaintiff proves by clear and convincing evidence that the damages resulted from fraud, malice, or

gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a). "This burden of proof may not be shifted to the defendant or satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice." *Id.* § 41.003(b). Once a defendant meets its initial burden to show the absence of a genuine issue of material fact, the burden shifts to the plaintiff "to designate specific facts showing that there is a genuine issue for trial." *Davis*, 765 F.3d at 484.

Because Louis Henna designates no specific facts showing there is a genuine issue for trial as to whether State Farm engaged in fraud, malice, or gross negligence, it does not meet its summary judgment burden. *Abulehieh*, 2024 WL 3305746, at *1 (granting summary judgment to defendant on plaintiff's request for exemplary damages when plaintiff came forth with no evidence creating a genuine issue of material fact on gross negligence, fraud, or malice). This Magistrate Judge recommends that Judge Pitman grant summary judgment on Louis Henna's claim for exemplary damages.

## V. Order

The Court **DENIES** State Farm Lloyd's Opposed Motion to Strike Expert Testimony of Arnulfo Escamilla (Dkt. 20).

## VI. Recommendation

This Magistrate Judge **RECOMMENDS** that Judge Pitman **GRANT** State Farm Lloyd's Motion for Partial Summary Judgment (Dkt. 24) as to Louis Henna's claim for exemplary damages and **DENY** the motion as to all other claims.

If Judge Pitman accepts this Report and Recommendation, all of Louis Henna's claims will remain pending except its claim for exemplary damages.

It is **FURTHER ORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable Robert Pitman.

## VII. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 31, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE